Alva Laverne LUCK, Mother and next friend of Jenell A. Baker, a minor, Plaintiffs,

v.

BALTIMORE AND OHIO RAILROAD COMPANY, a corporation, Defendant.

Civ. A. No. 1304–71.

United States District Court, District of Columbia.

Dec. 13, 1972.

John A. Keats, Washington, D. C., for plaintiffs.

Laidler B. Mackall, of Steptoe & Johnson, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

KEECH, District Judge.

This case is now before the court on minor plaintiff's motion for new trial (as to damages only), following a jury verdict in her favor of $2,000.00 (and verdict against plaintiff mother individually). Defendant filed an opposition to that motion. In addition defendant filed a timely motion for judgment n. o. v.

The facts, briefly, are: Minor plaintiff, Jenell (through her mother and next friend), and her mother individually, filed suit [1] against the defendant railroad for damages resulting from injuries sustained when Jenell was struck by one of defendant's trains on August 11, 1970, while effecting the removal of

---

[1] Relying on the "rescue doctrine".

her brother, another minor, from defendant's tracks. At the trial[2] the defendant railroad moved the court to direct a verdict in its favor. Defendant contended that Jenell was without right to recover, for the reasons that the brother (Tyrone) was a trespasser, that plaintiffs had not shown any breach of duty owed by the railroad under such circumstances (i. e., willful, wanton or intentional injury to a trespasser), and that Jenell had the same status as her brother (trespasser). Defendant contended that the applicable law in this jurisdiction was that enunciated in the *Firfer* case[3] by the United States Court of Appeals for the District of Columbia (when sitting as the highest court of the District of Columbia and enjoying the same status as the highest court of a state). The duty there prescribed was not to willfully, wantonly or intentionally injure a trespasser. Defendant further contended that the later decision of the United States Court of Appeals in the *Arbaugh* case[4] (which did away with the categories of trespasser, licensee, and invitee, and established as the test ordinary and reasonable care under all of the circumstances) was not applicable—for the reason that it was rendered subsequent to the effective date of the Reorganization Act,[5] and thus did not constitute the law of the highest (State) court of the District of Columbia; that the applicable law in the District of Columbia remained, therefore, that announced in the *Firfer* case, *supra,* in conformity with the decision of the United States Supreme Court in the case of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Plaintiffs contended that the governing law was that embodied in the *Arbaugh* case, *supra,* fixing as the standard of care (for the railroad, here) the exercise of ordinary and reasonable care under all the facts and circumstances. The case went to the jury under that theory. There was *some* evidence upon which to send the case to the jury on that theory. There was *no* evidence that the defendant railroad was willfully, wantonly or intentionally negligent.

If the duty owed minor plaintiff be the same, under the evidence, as that owed Tyrone (a trespasser), who was rescued from the tracks, and if the *Firfer* case be the controlling law, the defendant's motion for judgment n. o. v. is well taken. On the other hand, if the *Arbaugh* case, *supra,* be applicable (notwithstanding the Reorganization Act and the fact that the determination in *Arbaugh* was *subsequent* to the *effective date of that Act,* and in spite of the *Erie* case, *supra*), requiring the railroad to exercise ordinary and reasonable care under all of the circumstances, then (to repeat) there was some evidence upon which to submit the case to the jury.[6] The sufficiency thereof will be dealt with later herein.

Was a showing of breach of duty by the railroad to Tyrone (rescuee) a condition precedent to (1) recovery by plaintiff Jenell (rescuer) and (2) applicability of the rescue doctrine? Clearly, Tyrone himself was a trespasser.[7] If the *Firfer* decision is applicable, then the duty owed Tyrone was limited to that owed a trespasser, i. e., not to willfully, wantonly or intentionally cause in-

---

2. On November 14, 1972.

3. Firfer v. United States, 93 U.S.App.D.C. 216, 219, 208 F.2d 524 (1953).

4. Smith v. Arbaugh's Restaurant, Inc., D. C.Cir., 469 F.2d 97, 1972.

5. Court Reorganization Act of 1970, § 199 (c), effective February 1, 1971, made the District of Columbia Court of Appeals the "highest court of the District of Columbia" (D.C.Code § 11–102 (Supp. V, 1972)).

6. Though the evidence was not clear, the court submitted the case to the jury in deference to the United States Court of Appeals' suggestion, leaving for later consideration, if it should become necessary, the propriety of such action.

7. See D.C. Police Regulations, Article 25, § 13, reading: "No unauthorized person shall loiter, walk, ride, drive or otherwise trespass upon the tracks * * * of any steam, diesel or electric railroad company operating in the District of Columbia."

**334**

jury. There was no showing that the defendant breached such duty. On the other hand, if the *Arbaugh* decision (removing classifications of persons entering on property of another—of trespasser, licensee or invitee) determined the duty of the railroad as requiring it, in its operation, to exercise ordinary and reasonable care under all of the circumstances, there was some evidence permitting the case to go to the jury. (See Footnote 6.) Absent a showing of breach of duty to Tyrone, the rescue doctrine was not available to Jenell.

At first blush, it might seem that public policy would dictate that a person reasonably endeavoring to save life or limb of another should not be dependent for the benefit of the rescue doctrine upon a showing that the negligence of (here) the railroad caused the predicament of the party sought to be rescued. On the other hand, would it not be unreasonable to require a party who did not in any particular make necessary the rescue to immunize the rescuer from incidental risks attending the voluntary act of the latter in attempting the rescue?

■ The rescue doctrine creates no new right of action for the rescuer. Within prescribed bounds the doctrine merely prevents the attempt to rescue from becoming a voluntary assumption of incidental risks (thus barring recovery).

■ In order for a rescuer to recover he must prove breach of duty owed him. If this be established his right of recovery cannot be defeated by the claim of voluntary assumption of incidental risks, provided the attempt to rescue be within generally recognized limits (i. e., if under the circumstances the effort was not unreasonable). With no showing of breach of duty to Tyrone (under *either Firfer or Arbaugh*), the rescue doctrine is not applicable.

■ The court concludes that the minor sought to be rescued was a trespasser. There was no breach by the defendant railroad of duty owed to a trespasser (*Firfer* case). The court further concludes that there was insufficient evidence, even assuming defendant's duty was to exercise ordinary and reasonable care, to show breach of duty owed Jenell. The court, on further consideration, is therefore constrained to hold that there was *not* sufficient probative evidence to permit the plaintiffs' case to go to the jury even on the theory that defendant's duty was to exercise ordinary and reasonable care under all of the circumstances (*Arbaugh* case). It follows that the defendant's motion for judgment n. o. v. should be granted for both reasons, and that plaintiffs' motion for new trial (as to damages only) becomes moot.[8]

■■ The standard of care required in this jurisdiction under applicable law established by the United States Court of Appeals for the District of Columbia in the *Firfer* case when it was functioning as the highest court for the *District of Columbia* (in comparable State status) is controlling. Decision by the United States Court of Appeals for the District of Columbia in the *Arbaugh* case, coming after the Reorganization Act establishing the District of Columbia Court of Appeals as the highest District of Columbia court, is not controlling, under pronouncement of the United States Supreme Court in the *Erie* case, *supra*. The probative evidence is not sufficient under either theory (i. e., *Firfer* or *Arbaugh*) to support plaintiffs' claim.

Accordingly, it is this 13th day of December, 1972,

Ordered that the motion for judgment n. o. v. be, and it is hereby granted. It is further

---

8. A consequence of the court's action on the motion for judgment n. o. v. However, if the court were required to act on the new trial motion as to damages only it would be denied. Issues of fact were presented by the evidence for determination—a function of the jury, not the court.

Ordered (the motion for new trial as to damages only being now moot) that in the event the granting of judgment n. o. v. be reversed, the motion for new trial as to damages only should be denied.